**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **PICTIVA DISPLAYS INTERNATIONAL LIMITED and KEY PATENT INNOVATIONS LIMITED,** <br> Plaintiffs, <br> v. <br> **BOE TECHNOLOGY GROUP, LTD.,** <br> Defendant. | Case No. 2:26-cv-1000 <br> JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Pictiva Displays International Limited ("Pictiva") and Key Patent Innovations Limited ("Key Patent" and collectively, "Plaintiffs") file this Original Complaint for Patent Infringement against Defendant BOE Technology Group, Ltd. ("BOE" or "Defendant") for infringement of U.S. Patent No. 8,633,585 ("the '585 Patent"), U.S. Patent No. 8,772,818 ("the '818 Patent"), U.S. Patent No. 11,043,654 ("the '654 Patent"), U.S. Patent No. 11,158,765 ("the '765 Patent"), and U.S. Patent No. 11,594,696 ("the '696 Patent") (collectively, the "Asserted Patents").

**THE PARTIES**

1. Plaintiff Pictiva is a corporation organized and existing under the laws of Ireland, with its principal place of business at The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin, Ireland A96 VR66. It operated under the name of Dolya Holdco 5 Limited until July 17, 2020.

2. Pictiva is the assignee of all right, title and interest in the Asserted Patents.

3. Plaintiff Key Patent is the beneficiary of a trust pursuant to which Pictiva owns, holds and asserts the Asserted Patents. Key Patent is an Irish entity duly organized and existing

under the laws of the Republic of Ireland. The address of the registered office of Key Patent is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4. On information and belief, Defendant BOE is a company organized and existing under the laws of China, having a principal place of business at No. 12, Xihuanzhong Road, BDA, Beijing, 100176, China.

5. BOE and its U.S. subsidiary, BOE Technology America (and their subsidiaries, affiliates and/or intermediaries) form an interrelated group of companies doing business as a collective whole under the BOE brand, which together comprise "the world's leading supplier of display technologies, products and services."[1] BOE and BOE Technology America are part of the same corporate structure and distribution chain for the making, using, selling, offering for sale, and/or importing the Accused Products (as defined *infra*) in the United States, including in Texas generally and this District in particular. On information and belief, BOE and BOE Technology America (and their subsidiaries, affiliates and/or intermediaries) share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused technologies. Thus, BOE and BOE Technology America (and their subsidiaries, affiliates and/or intermediaries) operate as a unitary business and BOE is vicariously liable for the acts of patent infringement alleged herein.

6. BOE, including its respective U.S. and foreign-based employees, agents, distributors, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. BOE and its U.S. and foreign-

[1] https://www.boe-us.com/ (last visited Aug. 24, 2026).

based employees, agents, distributors, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling Accused Products (as defined *infra*) that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this District. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state . . . ."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

8. This Court may exercise general and specific personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, inter alia, (i) Defendant has and continues to do business in Texas and/or (ii) the Defendant has, directly and through intermediaries, distributors, agents, and/or others committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, selling, and/or importing OLED display products that infringe the Asserted Patents. Defendant has placed, and is continuing to place, OLED display products that infringe the Asserted Patents into the stream of commerce, via established

distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendant has derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendant has substantial business in this State and District (including, as relevant, in the past), including: (A) conducting at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and/or imported, and services provided to Texas residents vicariously through and/or in concert with its respective alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

9. BOE holds itself and its subsidiaries out as a single global entity serving the United States. For example, BOE has stated that its display products are intended to be sold and used "abroad" and that "one out of every four display products in the world come[s] from BOE."[2] BOE has also touted itself as a "global leader in the . . . manufacture of semiconductor displays and a technological pioneer in the field of organic light emitting diode (OLED) displays."[3]

10. BOE knows or should reasonably expect that the Accused Products (as defined *infra*) are incorporated into finished consumer products sold in the United States, including in Texas (the state with the second-highest population) and this District. BOE further knows or should reasonably expect that these finished consumer products, such as Apple smartphones, Motorola smartphones, Lenovo laptops, and other end-user devices, are sold in many retail locations throughout the United States, including in Texas and in this District. BOE also knows or should reasonably expect that finished consumer products that infringe the Asserted Patents, or that

[2] *About US*, https://www.boe.com/en/about/index (last visited Aug. 19, 2026).
[3] Dkt. No. 1, at ¶ 1, *BOE Tech. Group Co., Ltd. v. Samsung Display Co., Ltd.*, No. 2:25-CV-00587 (E.D. Tex. May 27, 2025).

incorporate OLED displays that infringe the Asserted Patents, are sold through U.S. websites controlled by U.S. companies, such as Apple, Motorola, and Lenovo, to U.S. consumers, including in Texas and this District.

11. BOE has derived substantial revenues from its infringing acts occurring within this State and this District, which includes at least part of the whole of its infringing activities alleged herein. BOE also derives substantial revenues from regularly and persistently doing or soliciting business in this State and this District, which includes substantial revenue from infringing goods offered for sale and sold in this State and this District directly and/or vicariously through and/or in concert with its agents, intermediaries, distributors, importers, and subsidiaries.

12. BOE has also purposely availed itself of the laws and protections of the United States, the State of Texas, and this District by filing claims and counterclaims in this District. *See, e.g.*, Dkt. No. 1, *BOE Tech. Grp. Co., Ltd. et al. v. Samsung Display Co., Ltd.*, No. 2:25-cv-00715 (E.D. Tex. July 15, 2025); Dkt. No. 1, *BOE Tech. Grp. Co., Ltd., et al. v. Samsung Display Co., Ltd.*, No. 2:25-cv-00587 (E.D. Tex. May 27, 2025); Dkt. No. 24, *IGNIS Innovations Display Panels LLC v. BOE Tech. Group Co., Ltd.*, No. 2:26-cv-00103 (E.D. Tex. July 7, 2026); Dkt. Nos. 49 and 50, *Bishop Display Tech. LLC v. BOE Technology Group Co., Ltd.*, No. 2:25-cv-00310 (E.D. Tex. Sept. 24, 2025); Dkt. No. 19, *Longitude Licensing Ltd. et al. v. BOE Tech. Grp. Co., Ltd.*, Case No. 2:25-cv-00440 (E.D. Tex. Sept. 8, 2025); Dkt. No. 18, *Longitude Licensing Ltd. et al. v. BOE Tech. Grp. Co., Ltd. et al.*, Case No. 2:25-cv-00358 (E.D. Tex. Aug. 11, 2025); Dkt. No. 58, *Longitude Licensing Ltd. v. BOE Tech. Grp. Co., Ltd.*, Case No. 2:23-cv-00515 (E.D. Tex. June 13, 2024).

13. Accordingly, BOE has established minimum contacts within the forum and purposefully availed itself of the benefits of Texas, such that the exercise of personal jurisdiction

over BOE would not offend traditional notions of fair play and substantial justice. Further, exercising personal jurisdiction over Defendant in this District would not be unreasonable given Defendant's contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiffs.

14. In addition, or in the alternative, the Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendant is consistent with the U.S. Constitution.

15. Venue is proper for BOE in this District pursuant to 28 U.S.C. § 1391(c). BOE is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

16. Further, BOE has previously conceded that venue is proper and convenient in this District, having not moved to transfer prior cases filed in this District, including *Longitude Licensing Limited et al. v. BOE Technology Group Co., Ltd. et al.*, No. 2:25-cv-00440-JRG (E.D. Tex.) (lead case); *Bishop Display Tech. LLC v. BOE Technology Group Co., Ltd.*, No. 2:25-cv-00310-JRG (E.D. Tex.) (lead case); *Paneltouch Techs. LLC v. BOE Tech. Group Co., Ltd.*, No. 2:25-cv-00245-JRG (E.D. Tex.); *Optronic Sciences LLC v. BOE Tech. Group Co., Ltd.*, No. 2:24-cv-00577-JRG (E.D. Tex.); *Optronic Sciences LLC v. BOE Tech. Group Co., Ltd.*, No. 2:23-cv-00549-JRG (E.D. Tex.); *Element Capital Commercial Co. Pte. Ltd. v. BOE Tech. Group Co.*, No. 2:22-CV-00118-JRG (E.D. Tex.); and *Vista Peak Ventures, LLC v. BOE Tech. Group Co.*, No. 2:18-CV-00431-JRG (E.D. Tex.).

## THE ASSERTED PATENTS

17. The Asserted Patents relate to, among other things, novel and fundamental aspects of OLED display technologies. OLED is the chosen display technology in a significant percentage of smartphones, televisions, wearables, computers and other devices; and it provides higher resolutions, greater brightness, thinner panels, and higher power efficiency than the prior-art technologies.

18. The patented inventions resulted from years of research and development by OSRAM, including OSRAM Opto Semiconductors GmbH, a German technology pioneer in the OLED field. OSRAM "embark[ed] on large scale research in the mid-1990s, establishing state-of-the-art OLED design and manufacturing operations."[4] OSRAM's inventive efforts led to commercial success with OSRAM manufacturing and selling OLED display modules under the Pictiva brand name in the early 2000s.[5]

19. Today, Plaintiffs are responsible for protecting and licensing OSRAM's seminal innovations in the OLED display field.[6]

### The '585 Patent

20. The '585 Patent, entitled "Device Comprising An Encapsulation Unit," duly and legally issued on January 21, 2014, from U.S. Patent Application No. 12/865,646, filed on January

---

[4] https://www.pictivadisplaysinternational.ie/; *see also* https://ams-osram.com/aboutus/history ("1997: First patents for OLED technology"; "2005: First commercial luminaire with OLED modules by OSRAM").

[5] *See, e.g.*, Ron Mertens, *OSRAM Expands Display Product Line with New OLED "Pictiva,"* OLED-INFO (July 15, 2004), https://www.oledinfo.com/oled_display_modules/osram_expands_display_product_line_with_new_oled_pictiva (reporting OSRAM Opto Semiconductors' announcement of a new Pictiva OLED display); "Pictiva™ OLED Display Reference Design", https://www.farnell.com/datasheets/50321.pdf.

[6] https://www.pictivadisplaysinternational.ie/ ("Pictiva is focused on licensing these pioneering inventions to established players and new entrants in the OLED display market.").

29, 2009, naming Christian Schmid, Tilman Schlenker, Heribert Zull, Ralph Paetzold, Markus Klein, and Karsten Heuser as the inventors. A copy of the ’585 Patent is attached hereto as Exhibit 1.

21. The ’585 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

22. The ’585 Patent has been in full force and effect since its issuance, and Plaintiffs own by assignment the entire right, title and interest in and to the ’585 Patent, including the right to seek damages for past, current, and future infringement thereof.

23. Plaintiffs have standing to sue for infringement of the ’585 Patent.

**<u>The ’818 Patent</u>**

24. The ’818 Patent, entitled “Radiation-Emitting Device and Method for Producing a Radiation-Emitting Device,” duly and legally issued on July 8, 2014, from U.S. Patent Application No. 13/055,901, filed on July 21, 2009, naming Markus Klein, Tilman Schlenker, and Andrew Ingle as the inventors. A copy of the ’818 Patent is attached hereto as Exhibit 2.

25. The ’818 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

26. The ’818 Patent has been in full force and effect since its issuance, and Plaintiffs own by assignment the entire right, title and interest in and to the ’818 Patent, including the right to seek damages for past, current, and future infringement thereof.

27. Plaintiffs have standing to sue for infringement of the ’818 Patent.

**<u>The ’654 Patent</u>**

28. The ’654 Patent, entitled “Multilayer Encapsulation, Method For Encapsulating And Optoelectronic Component,” duly and legally issued on June 22, 2021, from U.S. Patent Application No. 16/830,023, filed on March 25, 2020, naming Sebastian Wittmann, Arne

Fleissner, and Erwin Lang as the inventors. A copy of the ’654 Patent is attached hereto as Exhibit 3.

29. The ’654 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

30. The ’654 Patent has been in full force and effect since its issuance, and Plaintiffs own by assignment the entire right, title and interest in and to the ’654 Patent, including the right to seek damages for past, current, and future infringement thereof.

31. Plaintiffs have standing to sue for infringement of the ’654 Patent.

**<u>The ’765 Patent</u>**

32. The ’765 Patent, entitled “Light-Emitting Component,” duly and legally issued on October 26, 2021, from U.S. Patent Application No. 16/792,608, filed on February 17, 2020, naming Daniel Riedel, Andreas Rausch, and Ulrich Niedermeier as the inventors. A copy of the ’765 Patent is attached hereto as Exhibit 4.

33. The ’765 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

34. The ’765 Patent has been in full force and effect since its issuance, and Plaintiffs own by assignment the entire right, title and interest in and to the ’765 Patent, including the right to seek damages for past, current, and future infringement thereof.

35. Plaintiffs have standing to sue for infringement of the ’765 Patent.

**<u>The ’696 Patent</u>**

36. The ’696 Patent, entitled “Organic Electronic Component And Method For Producing An Organic Electronic Component,” duly and legally issued on February 28, 2023, from U.S. Patent Application No. 16/925,627, filed on July 10, 2020, naming Andreas Rausch and Niels Gerlitzki as the inventors. A copy of the ’696 Patent is attached hereto as Exhibit 5.

37. The ’696 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

38. The ’696 Patent has been in full force and effect since its issuance, and Plaintiffs own by assignment the entire right, title and interest in and to the ’696 Patent, including the right to seek damages for past, current, and future infringement thereof.

39. Plaintiffs have standing to sue for infringement of the ’696 Patent.

40. The Asserted Patents are valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

41. To the extent any marking or notice was required by 35 U.S.C. § 287, Plaintiffs have complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287. For example, as discussed herein, BOE was previously put on notice of its infringement of the ’585 and ’818 Patents via an April 13, 2021, letter from Pictiva. Further, by virtue of service of this Complaint, BOE is on notice of its infringement of the ’654, ’765, and ’696 Patents, to the extent it was not already on notice.

**GENERAL ALLEGATIONS**

42. The Accused Products are, or are part of, OLED displays made, used, offered for sale, sold, and/or imported, directly or indirectly, by BOE, including OLED displays incorporated by BOE’s third-party customers into smartphones, tablets, laptops, monitors, TVs, smartwatches, vehicles, and other end-user devices (collectively, “Accused Products”). For example, the Accused Products include, or are part of, BOE’s OLED displays that are incorporated into various models, sizes, and variants of Apple’s iPhone end-user devices, such as the iPhone 16e and 17e smartphones, Motorola’s end-user devices, such as the Razr and Edge smartphones, at least from the 2021-2023 period, and Lenovo’s end-user devices, such as the Yoga Air 14 Ultra / Yoga Slim 7i Ultra Aura laptop.

43. BOE has made, used, sold, offered for sale, and/or imported into the United States (and continues to make, use, offer for sale, sell, and/or import into the United States) Accused Products in the United States and provides Accused Products to third parties for sale in or importation into the United States as part of third-party devices.

44. BOE actively targets the U.S. market for sales of the Accused Products. For example, BOE sells Accused Products to customers, such as Apple, Motorola, and Lenovo, for incorporation into electronic devices, and those sales occur in the United States.

45. BOE did not have Pictiva's permission to make, use, sell, offer to sell, or import the Accused Products.

46. BOE has infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Asserted Patents by making, using, selling, offering for sale, and/or importing the Accused Products in the United States.

47. BOE's customers and end-users have directly infringed the Asserted Patents by testing or using the Accused Products.

48. BOE is in the business of selling the Accused Products and encouraging and helping customers to use, sell, offer for sale, or import the Accused Products, including in an infringing manner. Through at least its product manuals, websites, and/or sales and marketing activities, BOE has and continues to (where applicable) solicit, instruct, encourage, and aid and abet its customers to sell, offer for sale, import, or use the Accused Products in an infringing way.[7]

49. BOE has had, or should have had, knowledge of one or more of the Asserted Patents at least through Plaintiffs' sending of (and BOE's receipt of) notice letters dated November 2,

---

[7] *See, e.g.*, https://boe-us.com/.

2020, April 13, 2021, and July 19, 2021, which identified the ’585 Patent and the ’818 Patent, additional patents, and the Accused Products. In addition, or in the alternative, BOE has had knowledge of the Asserted Patents through the service of this Complaint.

50. By receiving such notice of infringement, Defendant obtained a subjective belief that there is a high probability that the Accused Products infringe the Asserted Patents. Despite being put on notice of infringement, on information and belief Defendant has not taken any actions to avoid the conduct alleged to infringe and has not sought to remedy its infringements by offering to take a license. Defendant’s failure to act reflects deliberate actions to avoid learning that the Accused Products infringe the Asserted Patents and, more generally, a policy of not earnestly reviewing and respecting the intellectual property of others.

51. BOE’s actions after learning of the Asserted Patents were with specific intent to cause infringement of one or more claims of each of the Asserted Patents.

52. Further discovery may reveal earlier knowledge of one or more of the Asserted Patents, which would provide additional evidence of Defendant’s knowledge, specific intent, willful blindness, and/or willful infringement of the Asserted Patents.

53. Despite having knowledge of the Asserted Patents, as well as knowledge that it was directly and/or indirectly infringing one or more claims of each Asserted Patent, Defendant nevertheless proceeded to infringe the Asserted Patents, and induce others to do the same, with full and complete knowledge of the applicability of the Asserted Patents to the Accused Products, without a license and without a good faith belief that the claims of the Asserted Patents were not infringed. As noted above, this includes, but is not limited to, the willful blindness of Defendant, including, for example, its refusal to investigate whether the Accused Products infringe the Asserted Patents.

54. Defendant also has contributed to, and continues to contribute to, direct infringement of the Asserted Patents by third parties, including by its customers and other importers, resellers, and end users in BOE's supply chain, in violation of 35 U.S.C. § 271(c). Defendant supplies the Accused Products to customers that incorporate them into their end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the Asserted Patents. The OLED displays that BOE has offered to sell, sold, imported, and/or provided to customers embody a material part of the claimed invention of at least one claim of each Asserted Patent.

55. Plaintiffs have been damaged as a result of Defendant's infringing conduct. Defendant is therefore liable to Plaintiffs in an amount that adequately compensates Plaintiffs for Defendant's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56. In addition, for the reasons discussed herein, Defendant's infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

57. Pictiva sent BOE a letter (addressed to BOE Chief Executive Officer Yanshun Chen), dated November 2, 2020, offering a license to Pictiva's patent portfolio, identifying several of Pictiva's patents, and identifying exemplary products or instrumentalities that Pictiva believes infringe those patents. Pictiva received no response from BOE in response to this letter.

58. Pictiva sent BOE a further letter (again addressed to BOE Chief Executive Officer Yanshun Chen), dated April 13, 2021, offering a license to Pictiva's patent portfolio, identifying several of Pictiva's patents (including the '585 Patent and the '818 Patent), and identifying

exemplary products or instrumentalities that Pictiva believes infringe those patents. Pictiva received no response from BOE in response to this letter.

59. Pictiva sent BOE a further letter (again addressed to BOE Chief Executive Officer Yanshun Chen), dated July 19, 2021, offering a license to Pictiva's patent portfolio, identifying several of Pictiva's patents, and identifying exemplary products or instrumentalities that Pictiva believes infringe those patents. Pictiva received no response from BOE in response to this letter.

## COUNT I – INFRINGEMENT OF THE '585 PATENT

60. Plaintiffs incorporate paragraphs 1 through 59 herein by reference.

61. Defendant has directly and/or indirectly infringed, and continues to infringe directly and/or indirectly, one or more claims of the '585 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Products.

62. An exemplary claim chart demonstrating Defendant's infringement of the '585 Patent, as well as Defendant's customers' infringement of the '585 Patent, which has been induced and/or contributed to by Defendant, is attached as Exhibit 6 and incorporated herein by reference.

63. Additionally, since learning of the '585 Patent, Defendant has indirectly infringed, and continues to indirectly infringe, the '585 Patent in violation of 35 U.S.C. § 271(b) at least by inducing the importation, sale, and use of the Accused Products. For example, BOE has induced (and continues to induce) its customers to directly infringe at least claim 1 of the '585 Patent via at least their sales, offers to sell, or importation of the Accused Products. As another example, BOE has induced (and continues to induce) its customers to purchase, demonstrate, test, and/or use the Accused Products in a way that directly infringes at least claim 1 of the '585 Patent.

64. On information and belief, despite Defendant's knowledge of the '585 Patent and of its infringement of the '585 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '585 Patent.

65. On information and belief, Defendant's actions represented a specific intent to induce infringement of at least claim 1 of the '585 Patent. For example, Defendant offered its customers extensive customer support, instructions, marketing and sales materials, service, and support that instructed and encouraged its customers to obtain and use the Accused Products in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '585 Patent.

66. As another example, BOE designed its products containing the Accused Products for compliance with United States regulations or to the specifications of its customers with knowledge that those customers would import and sell the Accused Products in the United States. Further, BOE seeks and has knowledge of the United States market for end-user products containing the Accused Products and seeks to fill demand in that market.

67. In addition, since learning of the '585 Patent, Defendant has indirectly infringed and continues to indirectly infringe the '585 Patent by contributing, in violation of 35 U.S.C. § 271(c), to the direct infringement of the '585 Patent by others in the United States, the State of Texas, and the Eastern District of Texas, through its supply of the Accused Products to customers that incorporate them into other products. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '585 Patent. The OLED displays that BOE has offered to sell, sold, imported, and/or provided to customers embody a material part of the claimed invention of at least one claim of the '585 Patent.

68. As a result of Defendant's infringement of the '585 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

69. In addition, since learning of the '585 Patent, Defendant's infringement of the '585 Patent, as detailed in this Complaint, has been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

70. In addition, Defendant's infringing acts and practices have caused and are causing immediate and irreparable harm to Plaintiffs.

**COUNT II – INFRINGEMENT OF THE '818 PATENT**

71. Plaintiffs incorporate paragraphs 1 through 59 herein by reference.

72. Defendant has directly and/or indirectly infringed, and continues to infringe directly and/or indirectly, one or more claims of the '818 Patent, including, for example, claim 15, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Products.

73. An exemplary claim chart demonstrating Defendant's infringement of the '818 Patent, as well as Defendant's customers' infringement of the '818 Patent, which has been induced and/or contributed to by Defendant, is attached as Exhibit 7 and incorporated herein by reference.

74. Additionally, since learning of the '818 Patent, Defendant has indirectly infringed, and continues to indirectly infringe, the '818 Patent in violation of 35 U.S.C. § 271(b) at least by inducing the importation, sale, and use of the Accused Products. For example, BOE has induced (and continues to induce) its customers to directly infringe at least claim 15 of the '818 Patent via

at least their sales, offers to sell, or importation of the Accused Products. As another example, BOE has induced (and continues to induce) its customers to purchase, demonstrate, test, and/or use the Accused Products in a way that directly infringes at least claim 15 of the '818 Patent.

75. On information and belief, despite Defendant's knowledge of the '818 Patent and of its infringement of the '818 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '818 Patent.

76. On information and belief, Defendant's actions represented a specific intent to induce infringement of at least claim 15 of the '818 Patent. For example, Defendant offered its customers extensive customer support, instructions, marketing and sales materials, service, and support that instructed and encouraged its customers to obtain and use the Accused Products in an infringing manner, including inducing actions that constitute direct infringement of claim 15 of the '818 Patent.

77. As another example, BOE designed its products containing the Accused Products for compliance with United States regulations or to the specifications of its customers with knowledge that those customers would import and sell the Accused Products in the United States. Further, BOE seeks and has knowledge of the United States market for end-user products containing the Accused Products and seeks to fill demand in that market.

78. In addition, since learning of the '818 Patent, Defendant has indirectly infringed and continues to indirectly infringe the '818 Patent by contributing, in violation of 35 U.S.C. § 271(c), to the direct infringement of the '818 Patent by others in the United States, the State of Texas, and the Eastern District of Texas, through its supply of the Accused Products to customers that incorporate them into other products. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '818

Patent. The OLED displays that BOE has offered to sell, sold, imported, and/or provided to customers embody a material part of the claimed invention of at least one claim of the ’818 Patent.

79. As a result of Defendant’s infringement of the ’818 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

80. In addition, since learning of the ’818 Patent, Defendant’s infringement of the ’818 Patent, as detailed in this Complaint, has been willful, egregious, wanton, and deliberate in disregard to Plaintiffs’ rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

81. In addition, Defendant’s infringing acts and practices have caused and are causing immediate and irreparable harm to Plaintiffs.

**COUNT III – INFRINGEMENT OF THE ’654 PATENT**

82. Plaintiffs incorporate paragraphs 1 through 59 herein by reference.

83. Defendant has directly and/or indirectly infringed, and continues to infringe directly and/or indirectly, one or more claims of the ’654 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Products.

84. An exemplary claim chart demonstrating Defendant’s infringement of the ’654 Patent, as well as Defendant’s customers’ infringement of the ’654 Patent, which has been induced and/or contributed to by Defendant, is attached as Exhibit 8 and incorporated herein by reference.

85. Additionally, since learning of the ’654 Patent, Defendant has indirectly infringed, and continues to indirectly infringe, the ’654 Patent in violation of 35 U.S.C. § 271(b) at least by

inducing the importation, sale, and use of the Accused Products. For example, BOE has induced (and continues to induce) its customers to directly infringe at least claim 1 of the ’654 Patent via at least their sales, offers to sell, or importation of the Accused Products. As another example, BOE has induced (and continues to induce) its customers to purchase, demonstrate, test, and/or use the Accused Products in a way that directly infringes at least claim 1 of the ’654 Patent.

86. On information and belief, despite Defendant’s knowledge of the ’654 Patent and of its infringement of the ’654 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the ’654 Patent.

87. On information and belief, Defendant’s actions represented a specific intent to induce infringement of at least claim 1 of the ’654 Patent. For example, Defendant offered its customers extensive customer support, instructions, marketing and sales materials, service, and support that instructed and encouraged its customers to obtain and use the Accused Products in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the ’654 Patent.

88. As another example, BOE designed its products containing the Accused Products for compliance with United States regulations or to the specifications of its customers with knowledge that those customers would import and sell the Accused Products in the United States. Further, BOE seeks and has knowledge of the United States market for end-user products containing the Accused Products and seeks to fill demand in that market.

89. In addition, since learning of the ’654 Patent, Defendant has indirectly infringed and continues to indirectly infringe the ’654 Patent by contributing, in violation of 35 U.S.C. § 271(c), to the direct infringement of the ’654 Patent by others in the United States, the State of Texas, and the Eastern District of Texas, through its supply of the Accused Products to customers

that incorporate them into other products. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the ’654 Patent. The OLED displays that BOE has offered to sell, sold, imported, and/or provided to customers embody a material part of the claimed invention of at least one claim of the ’654 Patent.

90. As a result of Defendant’s infringement of the ’654 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

91. In addition, since learning of the ’654 Patent, Defendant’s infringement of the ’654 Patent, as detailed in this Complaint, has been willful, egregious, wanton, and deliberate in disregard to Plaintiffs’ rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

92. In addition, Defendant’s infringing acts and practices have caused and are causing immediate and irreparable harm to Plaintiffs.

**<u>COUNT IV – INFRINGEMENT OF THE ’765 PATENT</u>**

93. Plaintiffs incorporate paragraphs 1 through 59 herein by reference.

94. Defendant has directly and/or indirectly infringed, and continues to infringe directly and/or indirectly, one or more claims of the ’765 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Products.

95. An exemplary claim chart demonstrating Defendant’s infringement of the ’765 Patent, as well as Defendant’s customers’ infringement of the ’765 Patent, which has been induced and/or contributed to by Defendant, is attached as Exhibit 9 and incorporated herein by reference.

96. Additionally, since learning of the ’765 Patent, Defendant has indirectly infringed, and continues to indirectly infringe, the ’765 Patent in violation of 35 U.S.C. § 271(b) at least by inducing the importation, sale, and use of the Accused Products. For example, BOE has induced (and continues to induce) its customers to directly infringe at least claim 1 of the ’765 Patent via at least their sales, offers to sell, or importation of the Accused Products. As another example, BOE has induced (and continues to induce) its customers to purchase, demonstrate, test, and/or use the Accused Products in a way that directly infringes at least claim 1 of the ’765 Patent.

97. On information and belief, despite Defendant’s knowledge of the ’765 Patent and of its infringement of the ’765 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the ’765 Patent.

98. On information and belief, Defendant’s actions represented a specific intent to induce infringement of at least claim 1 of the ’765 Patent. For example, Defendant offered its customers extensive customer support, instructions, marketing and sales materials, service, and support that instructed and encouraged its customers to obtain and use the Accused Products in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the ’765 Patent.

99. As another example, BOE designed its products containing the Accused Products for compliance with United States regulations or to the specifications of its customers with knowledge that those customers would import and sell the Accused Products in the United States. Further, BOE seeks and has knowledge of the United States market for end-user products containing the Accused Products and seeks to fill demand in that market.

100. In addition, since learning of the ’765 Patent, Defendant has indirectly infringed and continues to indirectly infringe the ’765 Patent by contributing, in violation of 35 U.S.C. §

271(c), to the direct infringement of the ’765 Patent by others in the United States, the State of Texas, and the Eastern District of Texas, through its supply of the Accused Products to customers that incorporate them into other products. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the ’765 Patent. The OLED displays that BOE has offered to sell, sold, imported, and/or provided to customers embody a material part of the claimed invention of at least one claim of the ’765 Patent.

101. As a result of Defendant’s infringement of the ’765 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

102. In addition, since learning of the ’765 Patent, Defendant’s infringement of the ’765 Patent, as detailed in this Complaint, has been willful, egregious, wanton, and deliberate in disregard to Plaintiffs’ rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

103. In addition, Defendant’s infringing acts and practices have caused and are causing immediate and irreparable harm to Plaintiffs.

**COUNT V – INFRINGEMENT OF THE ’696 PATENT**

104. Plaintiffs incorporate paragraphs 1 through 59 herein by reference.

105. Defendant has directly and/or indirectly infringed, and continues to infringe directly and/or indirectly, one or more claims of the ’696 Patent, including, for example, claim 8, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Products.

106. An exemplary claim chart demonstrating Defendant's infringement of the '696 Patent, as well as Defendant's customers' infringement of the '696 Patent, which has been induced and/or contributed to by Defendant, is attached as Exhibit 10 and incorporated herein by reference.

107. Additionally, since learning of the '696 Patent, Defendant has indirectly infringed, and continues to indirectly infringe, the '696 Patent in violation of 35 U.S.C. § 271(b) at least by inducing the importation, sale, and use of the Accused Products. For example, BOE has induced (and continues to induce) its customers to directly infringe at least claim 8 of the '696 Patent via at least their sales, offers to sell, or importation of the Accused Products. As another example, BOE has induced (and continues to induce) its customers to purchase, demonstrate, test, and/or use the Accused Products in a way that directly infringes at least claim 8 of the '696 Patent.

108. On information and belief, despite Defendant's knowledge of the '696 Patent and of its infringement of the '696 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '696 Patent.

109. On information and belief, Defendant's actions represented a specific intent to induce infringement of at least claim 8 of the '696 Patent. For example, Defendant offered its customers extensive customer support, instructions, marketing and sales materials, service, and support that instructed and encouraged its customers to obtain and use the Accused Products in an infringing manner, including inducing actions that constitute direct infringement of claim 8 of the '696 Patent.

110. As another example, BOE designed its products containing the Accused Products for compliance with United States regulations or to the specifications of its customers with knowledge that those customers would import and sell the Accused Products in the United States.

111. Further, BOE seeks and has knowledge of the United States market for end-user products containing the Accused Products and seeks to fill demand in that market.

112. In addition, since learning of the ’696 Patent, Defendant has indirectly infringed and continues to indirectly infringe the ’696 Patent by contributing, in violation of 35 U.S.C. § 271(c), to the direct infringement of the ’696 Patent by others in the United States, the State of Texas, and the Eastern District of Texas, through its supply of the Accused Products to customers that incorporate them into other products. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the ’696 Patent. The OLED displays that BOE has offered to sell, sold, imported, and/or provided to customers embody a material part of the claimed invention of at least one claim of the ’696 Patent.

113. As a result of Defendant’s infringement of the ’696 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

114. In addition, since learning of the ’696 Patent, Defendant’s infringement of the ’696 Patent, as detailed in this Complaint, has been willful, egregious, wanton, and deliberate in disregard to Plaintiffs’ rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

115. In addition, Defendant’s infringing acts and practices have caused and are causing immediate and irreparable harm to Plaintiffs.

## **JURY DEMAND**

Plaintiffs request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiffs ask that the Court find in their favor and against Defendant and that the Court grant Plaintiffs the following relief:

1. A judgment that Defendant has directly and/or indirectly infringed one or more claims of each of the Asserted Patents either literally or under the doctrine of equivalents;

2. A judgment requiring Defendant to pay Plaintiffs damages under 35 U.S.C. § 284 for its past, present, and future infringement, as applicable, of each of the Asserted Patents, including an accounting for any sales or damages not presented at trial;

3. A judgment and order that Defendant has willfully infringed the Asserted Patents and requiring Defendant to pay Plaintiffs enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285;

4. A judgment that Defendant account for and pay to Plaintiffs a reasonable, ongoing, post-judgment royalty for any continuing infringing activities not already accounted for;

5. A permanent injunction enjoining Defendant and its officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or in concert with Defendant from further infringement of the Asserted Patents;

6. A judgment and order requiring Defendant to pay Plaintiffs prejudgment and post-judgment interest on the damages awarded;

7. A judgment and order requiring Defendant to pay Plaintiffs' costs; and

8. Such other and further relief as the Court deems just and equitable.

Dated: November 4, 2026

Respectfully submitted,

/s/ *Timothy E. Grochocinski*
Timothy E. Grochocinski
Illinois Bar No. 6295055
tim@nelbum.com
C. Austin Ginnings
Illinois Bar No. 6343678
austin@nelbum.com
Taryn N. Trusty
Illinois Bar No. 6344409
taryn@nelbum.com
NELSON BUMGARDNER CONROY PC
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
708.675.1974 (telephone)

T. William Kennedy Jr.
Texas Bar No. 24055771
NELSON BUMGARDNER CONROY PC
2727 North Harwood Street, Suite 250
Dallas, Texas 75201
214.446.4950 (telephone)

*Attorneys for Plaintiffs*
*Pictiva Displays International Limited and*
*Key Patent Innovations Limited*